UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EUGENE BROWN,

      Petitioner,

                                     Case No. 05-72156

v.

                                     Honorable Patrick J. Duggan

KENNETH T. MCKEE,

      Respondent.

_____/


## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 17,2007.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

Eugene Brown ("Petitioner"), a state prisoner presently confined at the Oaks

Correctional Facility[1] in Manistee, Michigan, has filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, alleging that he is being held in violation of his

constitutional rights. In his application, filed by attorneys Samuel Posner and Gerald F.

Posner, Petitioner challenges his conviction on one count of first-degree felony murder,

---

[1]Normally, the Court would order that the caption of the case be amended to reflect that
the proper respondent in this case is Cindi S. Curtin, the warden of Oaks Correctional Facility in
Manistee, Michigan, the current location of Petitioner. *See* Rule 2 of the Rules Governing
Section 2254 Cases in the United States District Courts. However, because the Court is denying
the petition, it will not do so in this case.

MICH. COMP. LAWS § 750.316, and one count of felony-firearm, MICH. COMP. LAWS § 750.227b. For the reasons stated below, the petition for writ of habeas corpus will be denied.

## I.  <u>Factual Background</u>

Petitioner's conviction arises from the robbery and shooting death of Jeffrey Burda, an ice cream delivery person, in Detroit, Michigan on December 23, 1999. *People v. Brown*, No. 239466, 2003 Mich. App. LEXIS 2874, *1-2 (Mich. Ct. App. Nov. 13, 2003)(unpublished). Following a joint trial with his co-defendant James Thomas Jett, Petitioner was convicted of the above offenses in the Wayne County Circuit Court.

After Petitioner was arrested, the 36th District Court referred him to the Third Circuit Court-Criminal Division Psychiatric Clinic for a competency evaluation. (Doc. No. 12-2, Journal of the Criminal Court (hereinafter "J. Crim. Ct.") at 1.) On March 2, 2000, Dr. Ronald E. Kolito found Petitioner competent to stand trial. (Doc. No. 32-2, Br. to Mich. Sup. Ct., Ex. C.) The 36th District Court docket sheet indicates that Petitioner was found competent at a hearing on May 3, 2000. (J. Crim. Ct. at 1.)

On August 10, 2000, the Wayne County Circuit Court signed an order appointing an independent psychiatrist to determine whether Petitioner was competent to waive his *Miranda* rights. (J. Crim. Ct. at 4.) Apparently, an independent examination was never obtained.

On January 30, 2001, Petitioner's first court-appointed attorney, Richard Glanda, was permitted to withdraw as counsel. (*Id.* at 5.) That same day, a second attorney, Lawrence Williams, was appointed to represent Petitioner. (*Id.* at 6.)

Prior to trial, Petitioner's new counsel moved to suppress his confession on the ground that Petitioner had invoked his right to remain silent by requesting an attorney after being arrested and that Petitioner was too intoxicated to knowingly and intelligently waive his Fifth Amendment rights, due to the ingestion of large quantities of alcohol and marijuana prior to his arrest. A *Walker*[2] hearing was conducted on Petitioner's motion to suppress on April 24, 2001 and May 4, 2001. The Michigan Court of Appeals, the last state court to rule on Petitioner's claims, summarized the facts[3] adduced at the hearing held on Petitioner's motion to suppress as follows:

> A *Walker* hearing was also held to determine whether [Petitioner's] confession should be suppressed. From the context of the testimony, it is apparent that the hearing did not raise the issue of competency, but rather examined whether [Petitioner's] waiver was knowingly and intelligently given.
>
> Shandalyn Wilson was called as a witness at the Walker hearing. Wilson indicated that [Petitioner] was the father of her child. On New Year's Eve, 1999, she was with [Petitioner] from approximately 8:00 p.m. until approximately 2:00 a.m. on New Year's Day, 2000. Wilson testified that during that time [Petitioner] was "high"; Wilson observed [Petitioner] smoke two blunts, as well as drink half of a bottle of tequila. The following afternoon Wilson went to [Petitioner's] house, where she saw him smoking more marijuana and drinking brandy.
>
> Barbara Simon, an investigator with the Detroit police department, testified that she interviewed [Petitioner] on January 1, 2000. Simon observed [Petitioner's] physical condition and stated that he appeared "fine, normal." Simon saw nothing to make her think [Petitioner] was under the influence of any sort of drug or alcohol. [Petitioner's] eyes were neither bloodshot nor glassy, and his speech was not

---

[2] *See People v. Walker,* 374 Mich. 331, 132 N.W. 2d 87 (1965).

[3] These facts are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

3

slurred. Simon added there was nothing to suggest any sort of physical injury.

In talking with [Petitioner], Simon learned he was nineteen years of age, and that he was enrolled in the twelfth grade at Osborn High School. Simon had [Petitioner] read his constitutional rights aloud to ensure he could read and write. [Petitioner] indicated that he understood, initialed each right, and signed the form. [Petitioner] did not indicate that he had any questions, and he did not ask for an attorney. Simon took a statement from [Petitioner], which he read to ensure accuracy, and then he signed the statement.

[Petitioner] testified that he was arrested on January 1, 2000. On New Year's Eve, [Petitioner] was at his mother's house drinking tequila and brandy. Petitioner estimated that he consumed a fifth of tequila, and a portion of a pint of brandy. In addition, [Petitioner] had approximately five "blunts" or marijuana cigars. That evening he drove to his house to sleep; when he woke up the following morning, he resumed drinking the remainder of the brandy, as well as smoking "blunts." A "short time" later, [Petitioner] was arrested and taken to police headquarters. [Petitioner] testified that he asked for an attorney when he was arrested, as well as when he arrived at police headquarters. On cross-examination, [Petitioner] acknowledged a constitutional rights form bearing his initials. Moreover, [Petitioner] noted that he had been arrested a year prior for carrying a concealed weapon. When [Petitioner] was arrested for that offense, he was advised of his rights, and he waived his right to counsel.

James Fisher, an investigator with the Detroit police department testified that he did not smell alcohol on [Petitioner's] breath. Clifford Jordan, also of the Detroit police department, testified that he assisted in arresting [Petitioner] and that [Petitioner] never requested an attorney. Terrell Shaw, of the Detroit police department, corroborated that [Petitioner] never asked for an attorney. Moreover, Shaw did not smell marijuana or alcohol when he arrested [Petitioner].

After hearing the arguments of the parties, the trial court ruled that [Petitioner's] statements to the police were admissible. The trial court found that [Petitioner] did not ask for an attorney, and that he was not intoxicated. The trial court believed that [Petitioner] would not have been able to function had he consumed as much as he indicated. Accordingly, the trial court determined that [Petitioner's]

confession was "knowingly, freely and voluntarily given."

*Brown*, 2003 Mich. App. LEXIS 2874, at *10-14.

The primary evidence introduced against Petitioner at trial came from co-defendant Lacoy Adrow, who pleaded guilty to a reduced charge of second-degree murder in exchange for his testimony against Jett and Petitioner. Adrow testified that he had a conversation with Jett and Petitioner about committing a robbery. Adrow testified that Petitioner provided the weapon, a .38 caliber handgun. A stolen van was driven by Petitioner to a Detroit gas station where Burda was spotted. Adrow testified that Jett got out of the van first and began to rob Burda. Adrow then got out of the van and struck Burda. As Burda attempted to escape, Jett shot and killed him. Jett also shot at several other individuals in the area, hitting and injuring one of them. Jett and Adrow then returned to the van, which Petitioner drove away.

Although several other persons testified about witnessing the shooting, none of them could identify Petitioner as being present at the shooting.

The other evidence against Petitioner consisted of a statement that he made to Officer Barbara Simon of the Detroit Police Department following his arrest. Petitioner told Simon that he drove the van and that Jett and Adrow got out of the van and went over to the victim, where Jett shot him. Jett and Adrow returned to the van, and the three men drove off. Petitioner told Simon that the robbery was Jett's idea, and that the murder weapon was a .38 caliber handgun, which belonged to Petitioner.

Petitioner's defense at trial was that there was no credible evidence to establish that Petitioner knowingly took part in the robbery and murder. Counsel attacked Adrow's

testimony both in his opening and in his closing arguments, (Doc. No. 22, 5/29/01 Trial

Tr. at 78-83; Doc. No. 29, 6/7/01 Trial Tr. at 30-51), and through cross-examination, by

arguing that Adrow was testifying against Petitioner solely because he had been offered

to plead guilty to a reduced charge of second-degree murder.  (Doc. No. 26, 6/5/01 Trial

Tr. at 5-20, 56-67.)  Counsel brought out the fact that Adrow had made two contradictory

statements to the police, that neither statement mentioned Petitioner being involved in the

shooting, and that even if Adrow was to be believed, there was no evidence that Petitioner

knew that Jett was going to shoot and kill the victim.  (Doc. No. 27, 6/4/01 Trial Tr. at

152-71.)  Counsel elicited testimony from the various eyewitnesses that they could not

identify Petitioner.  (Doc. No. 23, 5/30/01 Trial Tr. at 66-67, 89-92, 124-28.)  Counsel

elicited testimony from Officer Barbara Simon that Petitioner did not initial the part of the

constitutional rights form which stated that he had not been threatened by the police.

(Doc. No. 26, 6/5/01 Trial Tr. at 129-41, 143.)  Counsel also challenged Simon's

testimony by obtaining admissions from Simon that Petitioner's statement had not been

videotaped or audiotaped or written by Petitioner in his own handwriting.  (*Id.*)  Simon

acknowledged that there were no witnesses to corroborate Petitioner's confession.  (*Id.*)

Simon also conceded that she never asked Petitioner whether the robbery was pre-planned

and although Petitioner admitted to driving the van, Simon acknowledged that she did not

ask Petitioner if he was the getaway driver or a lookout.  (*Id.*)  At the conclusion of the

prosecutor's case, Petitioner's counsel moved for a directed verdict. (Doc. No. 28,

6/6/2001 Trial Tr. at 122-27.)

On June 8, 2001, the jury returned a verdict of guilty as to both charges against

Petitioner. Subsequently, on July 16, 2001, Petitioner was sentenced to life in prison

without parole for the first-degree felony murder charge, and a consecutive two years for

the felony firearm charge.

## II. Procedural History

Following sentencing, Petitioner filed a direct appeal with the Michigan Court of

Appeals raising the following issue:

> Was the Defendant denied his state and federal constitutional
> rights to the effective assistance of trial counsel where
> counsel failed to investigate and raise the issue of competency
> to stand trial and to waive his *Miranda* rights and the defense
> of insanity, both at the *Walker* hearing and at trial, and
> presented no defense at trial, no witnesses, no evidence of any
> kind, including no evidence of defendant's psychiatric
> hospitalizations and treatment, mental illness and significant
> mental retardation, which would not only support a defense of
> insanity or lack of competency, but would also cast grave
> doubt upon the statement he allegedly made to the police, and
> even told the defendant not to testify?

(Doc. No. 33, Petitioner's App. Br. at 3.) Petitioner's conviction was affirmed on direct

appeal. *People v. Brown,* No. 239466, 2003 Mich. App. LEXIS 2874, at *23

(Mich.Ct.App. Nov. 13, 2003). In addition to filing a direct appeal, Petitioner also filed a

Motion to Remand with the Michigan Court of Appeals, seeking an order remanding "to

the trial court for hearing, development of a factual record, and initial decision on [his]

claim that he is entitled to a new trial due to ineffective assistance of counsel."

(Appendix to Petition (hereinafter "Appx."), Ex. 3.) In a one sentence order, the

Michigan Court of Appeals denied Petitioner's motion to remand "for failure to persuade

the Court of the need to remand at this time." (Appx., Ex. 2.)

Petitioner then sought leave from the Michigan Supreme Court to appeal the

Michigan Court of Appeals' decisions affirming his conviction and denying his motion to

remand, which were denied. *People v. Brown*, 470 Mich. 873, 687 N.W.2d 293

(2004)("Cavanagh and Kelly, JJ. would remand this case for an evidentiary hearing on

defendant's claim of ineffective assistance of trial counsel.")

Petitioner now seeks the issuance of a writ of habeas corpus on the following

grounds:

> I.   Denial of constitutional right to effective assistance of
>      counsel.
>
> II.  Denial of constitutional right to due process of law.

(Pet. at 4-6.)

## III.   <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of

habeas corpus if he can show that the state court's adjudication of his claims on the

merits–

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under § 2254(d), Petitioner must show that the state

court's decision "was either contrary to, or an unreasonable application of, [the Supreme]

Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has decided on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).[4] A state court's decision is an "unreasonable application of" clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Relief is also available under the "unreasonable application" clause "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S. Ct. at 1520; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005).[5]

## IV. <u>Applicable Law and Analysis</u>

### A. <u>Due Process Claim</u>

---

[4] The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 495 (1976)).

[5] The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535 (citations omitted); *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

This Court will address Petitioner's second claim first. In his second claim, Petitioner contends that he was deprived of due process and a meaningful appeal when the Michigan Court of Appeals denied his motion to remand his case to the trial court to conduct an evidentiary hearing on his ineffective assistance of counsel claim pursuant to *People v. Ginther*, 390 Mich. 436, 443-44, 212 N.W. 2d 922, 925 (1973)[6] and MICH. CT. R. 7.211(C)(1).[7] (Rep. Br. at 14.) As stated above, the Michigan Court of Appeals denied Petitioner's motion to remand "for failure to persuade the Court of the need to remand at this time." (Appx., Ex. 2.)

This Court does not have the power to grant habeas relief on Petitioner's claim that the Michigan Court of Appeals improperly denied his motion to remand for an

_____

[6]In *Ginther*, the Michigan Supreme Court stated:
> A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purposes of establishing his claims with evidence as a precondition to evoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing.

*Ginther*, 390 Mich. at 443-44, 212 N.W. 2d at 925.

[7]More specifically, Petitioner argues that he
> is entitled to the issuance of a writ of habeas corpus for the reason that he was denied his constitutional right to due process of law by deciding and denying [Petitioner's] appeal based on his claim of ineffective assistance of counsel on the grounds that the inadequate record did not support the claim while at the same time denying him an opportunity to present his defense by denying his timely motion to remand the case to the trial court for an evidentiary hearing and development of a necessary factual record on his claim that he was entitled to a new trial due to ineffective assistance of counsel.

(Rep. Br. at 14.)

evidentiary hearing pursuant to MICH. CT. R. 7.211. As an initial matter, there is no federal constitutional right to appeal a state court conviction. *Cleaver v. Bordenkircher*, 634 F. 2d 1010, 1011 (6th Cir. 1980). In addition, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Contrary to Petitioner's contention, whether the Michigan Court of Appeals erred in its application of MICH. CT. R. 7.211 in denying Petitioner's motion to remand for an evidentiary hearing on his ineffective assistance of counsel claim is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik,* 193 Fed. Appx. 577, 584 (6th Cir. 2006). Accordingly, Petitioner is not entitled to habeas relief on his second claim.

Moreover, even if there is a due process component to Petitioner's second claim involving the denial of his motion to remand, deprivation of this sort would not form the basis for issuing a writ of habeas corpus, but might support a request for an evidentiary hearing in this Court for the purpose of developing a record on the Petitioner's ineffective assistance of counsel claims. *See May v. Renico*, 00-10420, 2002 U.S. Dist. LEXIS 23556, at *14 (E.D. Mich. Nov. 12, 2002)(Lawson, J.). Nonetheless, this Court does not believe that Petitioner is entitled to an evidentiary hearing in the federal court on his ineffective assistance of counsel claims.[8]

The statutory provision governing evidentiary hearings in federal habeas actions

---

[8]Petitioner seems to agree and maintains that an evidentiary hearing is unnecessary, unless "this Court believe[s] that the record is insufficient." (Rep. Br. at 14, 18.)

provides:

> (2) If an applicant for a writ of habeas corpus has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>> (A) the claim relies on:
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Obtaining an evidentiary hearing on an ineffective assistance of counsel claim requires a petitioner to establish that: "(1) his allegations, if proven, would constitute a colorable claim entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found relevant facts." *Correll v. Stewart*, 137 F. 3d 1404, 1411 (9th Cir. 1998); *Barber v. Birkett,* 276 F. Supp. 2d 700, 706 (E.D. Mich. 2003)(Gadola, J.)(denying an evidentiary hearing on an ineffective assistance of counsel claim where the petitioner failed to assert any facts that, if true, would amount to a constitutional error). In other words, "[e]ntitlement to an evidentiary hearing based on alleged ineffective assistance . . . requires a showing [by the petitioner] that if his allegations were proven at the evidentiary hearing, deficient performance and prejudice would be established." *Turner v. Calderon,* 281 F. 3d 851, 890 (9th Cir. 2002).

As discussed below when addressing Petitioner's ineffective assistance of counsel claim, Petitioner is unable to establish that his allegations of ineffective assistance of

counsel, even if true, would entitle him to habeas relief. Thus, to the extent that Petitioner's second claim is understood to be a request for an evidentiary hearing on his ineffective assistance of counsel claim, the facts which Petitioner would seek to develop in an evidentiary hearing would not support habeas relief.

## B. Ineffective Assistance of Counsel

With respect to his first claim based on ineffective assistance of trial counsel, Petitioner argues that:

> [He] was clearly deprived of his right to effective assistance of counsel where his trial counsel failed to investigate and raise the issue of competency to stand trial and to waive his Miranda rights and the defense of insanity, both at the Walker hearing and at trial, failed to seek an independent psychiatric evaluation of Petitioner, and presented no defense at trial, no witnesses, no evidence of any kind, including no evidence of defendant's [*sic*] psychiatric hospitalizations and treatment, mental illness, significant mental retardation, and lack of mental capacity, which would not only support a defense of insanity or lack of competency, but would also cast grave doubt upon the statement he allegedly made to the police, and, further, even told the defendant not to testify.

(Rep. Br. at 4.) More specifically, Petitioner contends that the Michigan "Court of Appeals clearly erred in [] holding that defense counsel's actions were 'strategic' and thus affirming defendant's [*sic*] convictions, because counsel's behavior cannot be considered objectively reasonable if his strategy is predicated on inadequate preparation or failure to make a reasonable investigation." (*Id.*)

In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Supreme Court established a two-pronged test for determining whether defense counsel is ineffective or constitutionally deficient. The first prong, known as the "performance"

prong, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The second prong, known as the "prejudice" prong, "requires showing that counsel's errors were so serious as to deprive [a] defendant of a fair trial, a trial whose result is reliable." *Id.*

"To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003)(citations omitted). In other words, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Furthermore, "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* "Because of difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

With respect to the "prejudice" prong, "[i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067. Rather, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068.

As an initial matter, the Court will address Petitioner's contention that his defense

counsel failed to present a defense at trial. Where defense "counsel fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984). The *Cronic* presumption "applies only where defense counsel *completely* or *entirely* fails to oppose the prosecution throughout the guilt or penalty phase *as a whole*." *Benge v. Johnson*, 474 F.3d 236 247 (6th Cir. 2007)(emphasis in original)(citing *Bell v. Cone*, 533 U.S. 685, 697, 122 S. Ct. 1843, 1851 (2002)).

Here, defense counsel actively represented Petitioner at trial. Counsel filed a pre-trial motion to suppress Petitioner's confession and represented him actively at the evidentiary hearing on the motion to suppress. Counsel made detailed opening and closing statements to the jury. Counsel also vigorously and extensively cross-examined the prosecution's witnesses, particularly Lacoy Adrow. Furthermore, Counsel made a motion for a directed verdict at the close of the prosecution's case. For these reasons, the Court concludes that counsel's alleged failures do not amount to a complete failure to provide a defense, and thus, the presumption of prejudice therefore does not apply to Petitioner's ineffective assistance of counsel claim.

Next, Petitioner asserts that the Michigan Court of Appeals unreasonably applied *Strickland* when it found that his second trial counsel's, Mr. Williams's, failure to investigate and pursue defenses for lack of mental capacity and insanity was a matter of strategy. Petitioner's primary contention is that his defense counsel's failure to assert mental competency and insanity defenses could not have been strategic because he

allegedly failed to secure records of Petitioner's psychiatric hospitalization and treatment records, to secure school records indicating Petitioner's alleged mental retardation, to obtain an independent psychiatric evaluation, to know that a competency evaluation was conducted and a competency report issued, and to interview Petitioner's family members.

In support of his ineffective assistance of counsel claim, Petitioner proffers the affidavit of Dr. Steven Miller, Ph.D., LP, and the affidavit of his current habeas counsel, Samuel Posner. After Petitioner's conviction and sentence, Dr. Steven Miller reviewed various psychiatric and psychological records of Petitioner, as well as the report prepared by Dr. Kolito, which had found Petitioner competent to stand trial. (Appx. Ex. 3A ¶ 3; Appx. Ex. 3C.) Dr. Miller did not personally interview Petitioner. (Appx. Ex. 3A ¶ 2.) In his affidavit, Dr. Miller indicated that after reviewing Petitioner's prior psychiatric records, he was able to "surmise, speculate, and/or conclude" the following about Petitioner's "possible neurological status, psychological adjustment and mental status at the time of his alleged crimes and prior to and during his trial, and his overall developmental cognitive functioning capacities (i.e., basic intelligence, attention and mental focus, memory, judgment, decision making abilities, affective stability, behavior control capacity, learning capacity, reality testing, and over-all social and emotional adjustment)." (*Id.* ¶ 3.) Dr. Miller concluded "that there are very strong indications that [Petitioner] suffers from what is legally defined as a 'mental illness,'" (*id.* ¶ 4), that Petitioner "quite possibly, suffers from 'Mental Retardation' as this term is defined by law," (*id.* ¶ 5.), and that Petitioner's mental functioning "may have rendered him unable to appreciate the nature and wrongfulness of his conduct and/or resulted in his lack of

capacity to conform his behavior to the requirements of the law." (*Id.*)

Petitioner's current habeas counsel, Samuel Posner, who also represented Petitioner on his state appeal, has provided the Court with an affidavit, in which he claims that he spoke with Petitioner's trial counsel, Mr. Williams. (Appx. Ex. 4 ¶ 1.) According to this affidavit, Mr. Williams told Mr. Posner "that he was not aware that there had been a competency hearing and competency evaluation before the preliminary examination in the 36th District Court, was unaware of any competency report and had never seen it, and that he was unaware that [Petitioner] had had any history of psychiatric problems, mental illnesses, or psychiatric hospitalizations." (*Id.* ¶ 2.) Mr. Posner also claims that Petitioner informed him that he wanted to testify at trial, but that Mr. "Williams told him not to testify and to say that he did not want to testify if asked by the court." (*Id.* ¶ 3.) Finally, Mr. Posner claims that Petitioner's family told him that they wished to speak with Mr. Williams about Petitioner's history of mental illnesses and psychiatric hospitalizations, but claimed that Mr. Williams would not speak with them. (*Id.* ¶ 4.) Mr. Posner, however, has not provided the Court with affidavits from Mr. Williams, Petitioner, or Petitioner's family members about these issues.

This Court does not believe that Petitioner's proffered evidence is sufficient to warrant habeas relief for Petitioner's ineffective assistance of counsel claim. First, Dr. Miller's after-the-fact evaluation is insufficient to establish that Petitioner was mentally incompetent to waive his Fifth Amendment rights, to stand trial, or to show that Petitioner was legally insane. Although Dr. Miller reviewed several of Petitioner's records from prior hospitalizations, Dr. Miller never met with or personally interviewed Petitioner. By

contrast, Dr. Kolito met with Petitioner and administered a number of psychological tests on him. Moreover, this Court does not believe that Dr. Miller's equivocal opinion, based solely on his review of Petitioner's records, is sufficient to establish that Petitioner was prejudiced by counsel's failure to raise a challenge to Petitioner's mental competency or to present an insanity defense at trial. *See Fisher v. Smith,* 126 Fed. Appx. 275, 282 (6th Cir. 2005)(holding that the equivocal testimony of Dr. Steven Miller regarding a petitioner's alleged insanity was "insufficient to establish a reasonable probability that, but for trial counsel's deficient performance, the outcome of the trial might have been different").

Second, the only evidence Petitioner proffers in support of his contention that his trial counsel failed to investigate the possible defenses of mental incompetency and insanity, told him not to testify, and refused to interview Petitioner's family members is Mr. Posner's affidavit. However, Mr. Posner's affidavit, which summarizes his conversations with Petitioner's trial counsel concerning the latter's unawareness of any competency evaluations or Petitioner's prior history of mental illnesses and psychiatric problems, as well as the conversations with Petitioner's family members regarding their desire to speak with Mr. Williams about Petitioner's background, is hearsay, and unless it falls within a hearsay exception, cannot be used to establish Petitioner's ineffective assistance of counsel claim. *See Horton v. Allen,* 370 F. 3d 75, 81 n. 5 (1st Cir. 2004)(citing *United States v. Maguire*, 600 F. 2d 330, 332 (1st Cir. 1979)). Petitioner has not argued that a hearsay exception applies. Thus, the portions of Mr. Posner's affidavit containing statements allegedly made by Petitioner's trial counsel after trial and

Petitioner's family members are inadmissible.

Even if Mr. Posner's hearsay statements were admissible and Dr. Miller's testimony was unequivocal and based on his personal assessment of Petitioner, this Court does not believe that, on this record, Petitioner has established "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In light of the fact that Petitioner stated that he "was sorry that the man got shot" in his statement to the police, (Doc. No. 26-4, 6/5/07 Trial Tr. at 126 (Ms. Simon reading Petitioner's statement into the record)), this Court does not believe that there is a reasonable probability that had Petitioner raised a defense of legal insanity the result of his trial would have been different. Under Michigan law, a defense of legal insanity "requires proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality of the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.'" *People v. Carpenter*, 464 Mich. 223, 230-31, 627 N.W. 2d 276, 280 (2001)(citing MICH. COMP. LAWS 768.21a(1)). Petitioner's statement that he "was sorry that the man got shot" indicates that he could appreciate the wrongfulness of his conduct. Consequently, this Court does not believe that Petitioner has established, through the affidavit of Dr. Miller, that but for his trial counsel's failure to assert an insanity defense, there is a reasonable probability that he would have been acquitted. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Likewise, as to Petitioner's argument that his trial counsel was ineffective for failing

to pursue a mental incompetency defense, this Court does not believe that, but for counsel's failure to pursue a defense of mental incompetency, there would have been a reasonable probability that Petitioner would not have been convicted. As an initial matter, "[a] defendant is not prejudiced by counsel's failure to seek a competency evaluation, absent an actual basis to support a claim of incompetency at the time of the proceeding." *Bair v. Phillips*, 106 F. Supp. 2d 934, 941 (E.D. Mich. 2000)(citing *Blanco v. Singletary*, 943 F.2d 1477, 1507 (11th Cir. 1991) and *Hernandez v. United States*, 839 F. Supp. 140, 143 (E.D.N.Y. 1993)).

On this record, the Court does not believe that there was an actual basis to support a claim of incompetency at the time of the trial.[9] Petitioner offers no evidence that he was acting abnormally at the time of the pre-trial or trial proceedings. *See Bair*, 106 F. Supp. 2d at 942. Indeed, a review of the transcript from the *Walker* hearing shows that Petitioner testified rationally and clearly regarding the circumstances surrounding the

---

[9]For similar reasons, this Court believes that Petitioner's reliance on death penalty cases dealing with ineffective assistance of counsel claims is misplaced. "Counsel's constitutional duty to investigate a defendant's background in preparation for the sentencing phase of a capital trial is 'well-established.'" *Harries v. Bell*, 417 F.3d 631 (6th Cir. 2005). Petitioner does not cite any case holding that defense counsel has a duty in all cases to research a defendant's background to determine the propriety of a mental incompetency defense. Moreover, the only case provided by Petitioner that is not a death penalty case is *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987). The Fifth Circuit in *Profitt* dealt with facts that are very different from those in the case at bar. In *Profitt*, the petitioner's trial counsel knew that the petitioner had escaped from a mental institution, but did not determine why the petitioner was in the mental institution. *Id.* at 1246. Based on the trial counsel's failure to inquire further into the reasons that the petitioner was in the mental institution, which would have alerted trial counsel to the fact that the petitioner had been adjudicated insane in a prior court proceeding, the Fifth Circuit concluded that the petitioner was entitled to habeas relief under *Strickland*. *Id.* at 1248-50. By contrast, there is nothing in this record to indicate that Petitioner's trial counsel was alerted to something that would have prompted an investigation into a potential defense of mental incompetency or insanity.

taking of his statement by the police. (Doc. No. 17, 4/24/2001 Tr. at 22-54.) At trial, counsel questioned Petitioner about whether he wanted to testify and Petitioner indicated on the record that he did not wish to testify. (Doc. No. 28, 6/06/2001 Tr. at 121-22.) Finally, at sentencing, Petitioner made a number of cogent complaints about how he felt that his constitutional rights had been violated by the police and at trial. (Doc. No. 31, 7/16/07 Sent. Tr. at 12-13.) In light of Petitioner's lucid, minutely detailed, and responsive testimony and remarks at these various pre-trial, trial, and sentencing proceedings, Petitioner is unable to establish that he was prejudiced by counsel's failure to raise the question of his competency to stand trial. *See Bainter v. Trickey,* 932 F. 2d 713, 716 (8th Cir. 1991)(holding that a habeas petitioner was unable to establish prejudice for his trial counsel's failure to properly investigate his psychological condition when he testified in a "lucid[,] . . . minutely detailed . . . and responsive manner").

Finally, Petitioner contends that he did want "to testify at trial, but attorney Williams told him not to testify and to say that he did not want to testify if asked by the Court." (Appx. Ex. 4.). Petitioner argues that this amounts to ineffective assistance of counsel. Even if Petitioner's trial counsel's performance was deficient for advising Petitioner not to testify, this Court does not believe that Petitioner has established prejudice. Petitioner has not shown that there is a reasonable probability that had his counsel not advised him not to take the stand the result of his trial would have been different.

## V.    Conclusion

For the reasons stated above, this Court does not believe that Petitioner is entitled to

habeas relief on either his due process claim or his ineffective assistance of counsel claim.

Accordingly,

**IT IS ORDERED**, that Petitioner's application for a writ of habeas corpus is

**DENIED.**

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Gerald F. Posner, Esq.
Samuel Posner, Esq.
Raina I. Korbakis, Esq.

Eugene Brown
#337830
Oaks Correctional Facility
1500 Caberfae Highway
Manistee, MI 49660